# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| **BEVERAGE DISPENSING SOLUTIONS, LLC,** | |
| Plaintiff, | CIVIL ACTION NO. |
| v. | 1:14-CV-00220-TCB |
| **THE COCA-COLA COMPANY,** | |
| Defendant. | |

## PLAINTIFF BEVERAGE DISPENSING SOLUTIONS, LLC'S RESPONSE TO THE COCA-COLA COMPANY'S OBJECTIONS TO THE SPECIAL MASTER'S REPORT AND RECOMMENDATION ON CLAIM CONSTRUCTION

DATED:  February 6, 2014

# **TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION …………………………………………… 1

II.   ARGUMENT ……………………………………………… 2

    A.   "image(s)" ……………………………………………….. 2

    B.   "compartment" …………………………………………... 5

    C.   "order processing system" / "remote order processing system"   9

    D.   "CO2 / gas supply apparatus" ………………………………   12

    E.   "refrigerator" …………………………………………….. 14

III.   CONCLUSION …………………………………………….. 17

# TABLE OF AUTHORITIES

**Cases**                                                         **Page(s)**

*Absolute Software, Inc. v. Stealth Signal, Inc.,*
    659 F. 3d 1121 (Fed. Cir. 2011) ……………………………… 15-16

*Acumed LLC v. Stryker Corp.,*
    483 F.3d 800 (Fed. Cir. 2007) …………………………… 8

*Advanced Display Sys., Inc. v. Kent State Univ.,*
    212 F.3d 1272 (Fed. Cir. 2000) ………………………… 10-11

*Hill-Rom Services, Inc. v. Stryker Corp.,*
    755 F.3d 1367 (Fed. Cir. 2014) ……………………………… 8, 11-12, 16

*Mangosoft, Inc. v. Oracle Corp.,*
    525 F. 3d 1327 (Fed. Cir. 2008) ………………………… 8

*Medrad, Inc. v. MRI Devices Corp.,*
    401 F. 3d 1313 (Fed. Cir. 2005) ………………………… 15-16

*Phillips v. AWH Corp.,*
    415 F.3d 1303 (Fed. Cir. 2005) ……………………….. *passim*

*U.S. Surgical Corp. v. Ethicon,*
    103 F.3d 1554 (Fed. Cir. 1997) ……………………….. 4, 10

# I.  __INTRODUCTION__

Coca-Cola's objections to the Special Master's Report and Recommendation (the "Report") fall into two categories: (1) argument that the Report improperly relied on dictionary definitions; and (2) argument that the Report failed to import limitations from the preferred embodiment as requested by Coca-Cola.  The Report did not err in either regard.

The Federal Circuit has not prohibited the use of dictionaries in the context of claim construction.  Rather, the Federal Circuit in *Phillips* specifically stated that judges are free to use dictionaries in claim construction so long as the definition used does not contradict the meaning of the term prescribed by the intrinsic evidence.  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1322-23 (Fed. Cir. 2005).  The Report's use of dictionary definitions is precisely in line with the claim construction framework outlined by the Federal Circuit and provided within the Report itself.  *See* Report, pp. 4-6 (Dkt. 96).

Further, the Report correctly rejected Coca-Cola's attempts to improperly limit the scope of the claims absent the patentee acting as his own lexicographer or clear disavowal of claim scope.  Coca-Cola's objections do not present any evidence or argument that warrants deviation from the Report.  As a result, Coca-

Cola's objections should be rejected and the Court should adopt the Report's

constructions for the disputed terms.

## II.    <u>ARGUMENT</u>

### A.    "image(s)"

| Special Master's Construction | Coca-Cola's Proposed Construction | BDS's Proposed Construction |
| --- | --- | --- |
| Plain and ordinary meaning, which is "a physical likeness or representation of a person, animal, or thing made visible. | "visual information about a beverage" | Plain and ordinary meaning. |

Coca-Cola does not take issue with the Report's finding that the plain and

ordinary meaning of the term "image(s)" should apply.  Coca-Cola merely objects

to the Report's conclusion as to what the plain and ordinary meaning is,

contending that the Report improperly relied on a dictionary definition from

Dictionary.com.

As a threshold matter, the Report did not improperly use a dictionary

definition.  In *Phillips* the Federal Circuit stated:

> … judges are free to consult dictionaries and technical treatises
> 'at any time in order to better understand the underlying
> technology and **may also rely on dictionary definitions when**
> **construing claim terms, so long as the dictionary definition**

> **does not contradict any definition found in or ascertained
> by a reading of the patent documents**.'

*Phillips*, 415 F.3d at 1322-23 (emphasis added).  This is exactly what the Report did – it relied on a dictionary definition that does not contradict the intrinsic evidence.

Coca-Cola does not contend that the definition adopted by the Report contradicts the intrinsic evidence or otherwise identify any portions of the intrinsic record that are inconsistent with the Report's construction.  This is because the Report's construction is consistent with the use of the term "image(s)" in the patents-in-suit.  *See e.g.,* '263 patent, Figs. 3A-3J, 24:5-9 (Dkt. 82-1); '616 patent, Figs. 4A-4J, Abstract, 19:32-37 (Dkt. 82-6).  This is highlighted by Figure 3A, shown below, which depicts an exemplar interface for the claimed apparatus with images of different beverage logos.



FIG. 3A

'263 patent, Figure 3A (Dkt. 82-1).

Coca-Cola also contends that the Report should have relied on a dictionary from around 2000, the claimed priority date of the patents-in-suit.  TCCC Objs., p. 4, n. 1 (Dkt. 101).  In the 2000 time frame the definition of "image(s)" was the same as prescribed by the Report: "a physical likeness or representation of a person, animal, or thing."  *See* Exhibit 1, Random House Webster's Dictionary, p. 359 (4th Ed. 2001).[1]

---

[1] Coca-Cola's contention that the phrase "physical likeness or representation" is vague and ambiguous is also without merit.  These are readily comprehensible words that will be understood by the finder of fact.  *See U.S. Surgical Corp. v. Ethicon*, 103 F.3d 1554, 1568 (Fed. Cir. 1997) (when a claim term or phrase will be readily comprehensible to the finder or fact no construction is required).

Coca-Cola also does not provide an alternative definition that it believes is more appropriate.  Coca-Cola merely contends that the plain and ordinary meaning of the term should govern.[2]  However, as acknowledged in the Report, and by the parties at the hearing, if the plain and ordinary meaning of the term is not resolved at this stage, the issue will just be deferred.  Report, p. 27 (Dkt. 96).  The Report correctly resolved the issue, setting forth a construction for "image(s)" that accurately reflects the plain and ordinary meaning of the term as it would have been understood in the 2000 time frame.  As a result, the Report's construction of the term "image(s)" and subsidiary recommendations should be adopted in full.

## B.   "compartment"

| Special Master's Construction | Coca-Cola's Proposed Construction | BDS's Proposed Construction |
|---|---|---|
| Plain and ordinary meaning. | "an enclosed space" | Plain and ordinary meaning. |

The Report correctly concluded that the plain and ordinary meaning of the term "compartment" should govern.  Coca-Cola however disputes the plain and

---

[2] Coca-Cola takes this position in an attempt to preserve an argument that an "image" as required by the patent claims does not have to actually be an image, and would for example encompass things such as words on an LCD display.  *See e.g.,* BDS's Claim Construction Presentation, Dkt. 94, p. 30.  This is clearly not what was contemplated by the patentee.  *See e.g.,* '263 patent, Figs. 3A-3J, 24:5-9 (Dkt. 82-1); '616 patent, Figs. 4A-4J, Abstract, 19:32-37 (Dkt. 82-6).

ordinary meaning of this term, contending that the plain and ordinary meaning of the term "compartment" is "an enclosed space."[3]

Coca-Cola correctly states that "the plain and ordinary meaning of the claim term must still be based on the patent's specification." TCCC Objs., p. 7 (Dkt. 101). However, Coca-Cola's proposed construction is directly refuted by the intrinsic evidence, which clearly depicts that a "compartment" may be an open space. For example, the '615 patent identifies a "beverage container compartment 30." *See e.g.,* '615 patent, 11:63-64, 12:2-3, 12:40 (Dkt. 82-5). This "compartment," which is shown below in Figure 6, is clearly not "an enclosed space."

---

[3] It should be noted that other dictionary definitions contemporaneous with the "time of invention" of the patents-in-suit were taken into consideration by the Special Master and are in line with the definition used by the Special Master. *See* Dkt. 82, p. 35; *see also* Dkt. 82-9.



FIG.6

'615 patent, Figure 6 (Dkt. 82-5).  In other words, adopting Coca-Cola's position

would result in violating the very maxim Coca-Cola asks this Court to adhere to

(i.e., not relying on dictionary definitions that contradict the meaning of a term ascribed by a patentee).

The Report applied the correct legal framework and correctly found that the plain and ordinary meaning of the term "compartment" should govern.  The Report began by ascertaining the plain and ordinary meaning of the term, utilizing a dictionary definition that was consistent with the intrinsic evidence,[4] and then found that there was no lexicography or disavowal that warranted deviation from the plain and ordinary meaning.  *See Hill-Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367, 1371 (Fed. Cir. 2014).  Coca-Cola's attempt to provide a definition that contradicts the intrinsic evidence should be rejected and the Report's conclusion should be adopted in full.

---

[4] This methodology is entirely consistent with Federal Circuit precedent.  When the ordinary meaning of claim language as understood by a person of skill in the art is readily apparent even to lay judges, claim construction involves little more than the application of the widely accepted meaning of commonly understood words, and the Federal Circuit has explicitly held that in such cases "general purpose dictionaries may be helpful."  *Phillips*, 415 F. 3d at 1314.  Additionally, the Federal Circuit has indicated that dictionaries may be consulted at any point in the claim construction analysis.  *Id*. at 1322-23; *Mangosoft, Inc. v. Oracle Corp*., 525 F. 3d 1327, 1330 (Fed. Cir. 2008); *Acumed LLC v. Stryker Corp*., 483 F.3d 800, 809 n. 2 (Fed. Cir. 2007).

## C.    "order processing system" and "remote order processing system"

| Special Master's Construction | Coca-Cola's Proposed Construction | BDS's Proposed Construction |
|---|---|---|
| "a server or processor that receives or processes orders" | "system that receives an order that is automatically generated and automatically transmitted by the processor" | "a server or processor configured to receive or process orders" |
| "a server or processor that receives or processes orders that is remote from the dispensing computer" | "remote system that receives an order that is automatically generated and automatically transmitted by the dispensing computer" | "a remote server or processor configured to receive or process orders" |

Coca-Cola only objects to the portion of the Report's construction that states the server or processor "receives or processes" orders, arguing that this should be "and" instead of "or."   TCCC Objs., p. 9 (Dkt. 101).   However, Coca-Cola's proposed modification improperly narrows the scope of claim 10 of the '290 patent.

The term "order processing system" appears in claim 1 of the '263 patent and claim 10 of the '290 patent.   The term "remote order processing system" appears in claim 17 of the '615 patent.   BDS does not dispute that claim 1 of the '263 patent and claim 17 of the '615 patent both require the order processing

9

system both receive and process orders.  As acknowledged by Coca-Cola, the claims specifically state this already.  *See* '263 patent, claim 1 (Dkt. 82-1); '615 patent, claim 17 (Dkt. 82-5); TCCC Objs., p. 9 (Dkt. 101).  As a result, what Coca-Cola wants is already present in these claims, and adopting Coca-Cola's proposal would only be an exercise in redundancy.  *See U.S. Surgical*, 103 F.3d at 1568 (noting that claim construction is not an exercise in redundancy).

However, claim 10 of the '290 patent does not require that the order processing system receive and process orders.  Rather, claims 9 and 10 of the '290 patent reference a "message," not an "order."  '290 patent, claims 9 and 10 (Dkt. 82-4).  Claim 9 of the '290 patent states: "wherein the computer is configured to automatically cause <u>a message</u> to be sent to a location remote from the appliance." *Id*.  Claim 10 of the '290 patent states: "wherein the computer is configured to cause <u>said message</u> to be sent to an order processing system remote from the appliance." *Id.*

The '290 patent incorporates by reference the specification of its parent application no. 09/589,725, which issued as the '525 patent.  *See* '290 patent, 1:5-17; Exhibit 2, U.S. Patent No. 6,751,525.  As a result, the '525 patent is part of the '290 patent specification.  *See Advanced Display Sys., Inc. v. Kent State Univ.*, 212

F.3d 1272, 1282-83 (Fed. Cir. 2000).[5]   The '525 patent specifically draws a distinction between an "order" and a mere "message," stating:

> Each time an order or low drink supply message is transmitted the order processing system 18, dispensing computer 30 tracks the amount of drink supply ordered.

'525 patent, 25:37-40.   Adopting Coca-Cola's proposal would improperly narrow the scope of claim 10 of the '290 patent by requiring the receipt of an order as opposed to merely a message.[6]   This is improper.

In other words, Coca-Cola's proposed construction seeks to rewrite claim 10 in the '290 patent to make it require receipt of orders (a specific embodiment in the patents-in-suit), as opposed to just messages (another embodiment in the patents-in-suit).   The Federal Circuit has repeatedly instructed that it is improper to do so absent (1) the patentee acting as his own lexicographer or (2) clear disavowal of claim scope.   *Hill-Rom*, 755 F.3d at 1371.   Neither are present in this instance, and Coca-Cola has not argued otherwise.   As a result, the Report's construction of the "order processing system" terms should be adopted and Coca-Cola's objections should be rejected.

---

[5] This argument equally applies to the specification of the '378 patent, 1:6-19 (Dkt. 82-3).

[6] This argument equally applies to claim 9 of the '378 patent (Dkt. 82-3).

### D.   "CO2 / gas supply apparatus"

| Special Master's Construction | Coca-Cola's Proposed Construction | BDS's Proposed Construction |
|---|---|---|
| Plain and ordinary meaning. | "an electromechanical mechanism for supply CO2" | Plain and ordinary meaning.  Does not require construction.  Alternatively, "a mechanism for supplying CO2" |

Coca-Cola's objections to these terms represent another improper attempt by Coca-Cola to narrow the scope of the claims absent lexicography or disclaimer. *See Hill-Rom*, 755 F.3d at 1371.  Coca-Cola did not, and has not, argued that the patentee acted as his own lexicographer with respect to these terms.  Further, the Report correctly concluded that "Coca-Cola has not shown that the inventor disclaimed the terms in a way that 'electromechanical' should be included in a construction of the terms."  Report, p. 22 (Dkt. 96).

In support of its argument, Coca-Cola does not argue that the patentee committed disclaimer.  Rather, Coca-Cola strategically selects portions of the claims and the specification in a misleading attempt to cobble together an argument that the "CO2 supply apparatus" and "gas supply apparatus" must be electromechanical.  TCCC Objs., pp. 11-13.

12

The term "CO2 supply apparatus" appears in claim 7 of the '290 patent.  The term "gas supply apparatus" appears in claim 1 of the '263 patent, claims 1, 9, and 17 of the '381 patent, and claims 11 and 30 of the '615 patent.   None of these claims require that "CO2 / gas supply apparatus" be electromechanical.  Coca-Cola's best argument is that claim 1 of the '263 patent indicate that the "gas supply apparatus" must be in communication with a processor and, therefore, must be electromechanical.  Even assuming *arguendo* that Coca-Cola is correct, this does not justify adopting Coca-Cola's position.  This is only one of the seven claims in which the term appears.  Further, if Coca-Cola is correct regarding claim 1 of the '263 patent, adding the term "electromechanical" would be redundant.

All of the other asserted claims in which the term appears do not require that the "CO2 / gas supply apparatus" be connected to the processor.  Rather, they specifically exclude the "CO2 / gas supply apparatus" from the list of items connected to the processor / computer.  For example, claims 1, 9, and 17 of the '381 patent state: "at least one processor operatively coupled to the display device and the input device."  '381 patent, claims 1, 9, and 17 (Dkt. 82-2).  Claims 1 and 20 in the '615 patent, from which claims 11 and 30 depend, require: "a dispensing computer supported by the housing and coupled to the water supplier, the supply dispenser, and the at least one user input device."  '615 patent, claims 1, 11, 20, 30

(Dkt. 82-5).  In other words, when the patentee wanted to indicate that the "CO2 / gas supply apparatus" should be connected to a processor / computer, he explicitly said so in the claims (i.e., claim 1 of the '263 patent).  In all other instances, the claims do not require this.

Coca-Cola's selective quoting of claims and portions of the specification do not rise to the level of disclaimer and, absent such disclaimer, it is improper to narrow the claims as suggested by Coca-Cola.  The Report correctly reached this conclusion.  This Court should do the same and reject Coca-Cola's objections and fully adopt the Report's construction of "CO2 / gas supply apparatus."

### E.   "refrigerator"

| Special Master's Construction | Coca-Cola's Proposed Construction | BDS's Proposed Construction |
|---|---|---|
| Plain and ordinary meaning. | "an appliance that includes electromechanical cooling equipment, which equipment is used to make or keep items cold or cool, such as a conventional residential refrigerator" | "a device that is used to make or keep items cold or cool" |

Thematically, Coca-Cola once again attempts to improperly narrow the scope of the claims, absent lexicography or disclaimer, by requiring that the

14

"refrigerator" be limited to a "conventional residential refrigerator."  As a threshold matter, Coca-Cola's argument should be rejected because it is being raised for the first time in its Objections, after claim construction briefing, the claim construction hearing, and issuance of the Report.  Coca-Cola asks this Court to limit the term "refrigerator" to a "conventional residential refrigerator." However, Coca-Cola's proposed construction for the term did not request this. Coca-Cola merely requested that an example of a "refrigerator" be added to the construction (i.e., "such as a conventional residential refrigerator").  The Report correctly rejected this exemplar phrase, noting that "the exemplar phrase in the Coca-Cola definition, 'such as a conventional residential refrigerator,' … only adds possible confusion or vagueness to the definition by including the words 'conventional' and 'residential.'"  Report, p. 12 (Dkt. 96).

Coca-Cola now argues, for the first time, that the phrase "conventional residential refrigerator" should be added to the claims not as an example of a "refrigerator," but rather as an absolute limitation as to the type of refrigerator that is covered by the claims.  By waiting until after claim construction briefing, the claim construction hearing, and issuance of the Report, Coca-Cola waived the right to now raise its untimely new position.  *Medrad, Inc. v. MRI Devices Corp*., 401 F. 3d 1313, 1318 (Fed. Cir. 2005) (where a party may have waived proposed

constructions first presented after the entry of a Report and Recommendation); *see also Absolute Software, Inc. v. Stealth Signal, Inc*., 659 F. 3d 1121, 1131 (Fed. Cir. 2011) (discussing waiver where arguments were not presented to the district court in a timely manner in the context of a Special Master for claim construction).

Setting this aside, Coca-Cola once again seeks to improperly limit the scope of the claims absent lexicography or disclaimer.  *See Hill-Rom*, 755 F.3d at 1371. The patents-in-suit specifically state that the claims are not limited to a "conventional residential refrigerator."  For example, the '290 and '615 patents state:

> It should be appreciated that **the present invention may be implemented in other appliances, in counter top beverage dispensing apparatus and in <u>commercial refrigerator</u> and <u>beverage dispensing apparatus</u>**.

'290 patent, 32:36-40 (Dkt. 82-4); '615 patent, 32:34-38 (Dkt. 82-5).   In addition, the '378, '616, and '624 patents state:

> The system of the present invention **<u>may be implemented in any appliance</u> which dispenses or uses a consumable product or supply such as a consumable packageable product or supply**.

'378 patent, 2:59-62 (Dkt. 82-3); '616 patent, 2:62-65 (Dkt. 82-6); '624 patent, 2:66-3:2 (Dkt. 82-7); *see also* '263 patent, Abstract, 24:15-20 (Dkt. 82-1), '381 patent, Abstract, 24:29-34 (Dkt. 82-2) (stating that user may be a commercial

business). The intrinsic evidence makes it clear that the term "refrigerator," as used in the claims, is not limited to a "conventional residential refrigerator." As a result, Coca-Cola's new proposal should be rejected and the Report's finding should be adopted.

## III.   <u>CONCLUSION</u>

For the reasons stated herein, Coca-Cola's objections to the Report should be rejected and the constructions set forth in the Report should be adopted.

DATED: February 6, 2015                    Respectfully submitted,

                              By:    /s/ *Timothy E. Grochocinski*
                                     Timothy E. Grochocinski
                                     Illinois Bar No. 6295055
                                     Joseph P. Oldaker
                                     Illinois Bar No. 6295319
                                     NELSON BUMGARDNER, P.C.
                                     15020 S. Ravinia Place, Suite 29
                                     Orland Park, Illinois 60462
                                     P. 708-675-1975
                                     tim@nelbum.com
                                     joseph@nelbum.com

                                     Steven G. Hill
                                     Jennifer L. Calvert
                                     Hill, Kertscher & Wharton LLP
                                     3350 Riverwood Parkway, Suite 800
                                     Atlanta, Georgia 30339
                                     sgh@hkw-law.com
                                     jc@hkw-law.com

                                     COUNSEL FOR PLAINTIFF
                                     BEVERAGE DISPENSING
                                     SOLUTIONS, LLC

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was served on all counsel of record on February 6, 2015, via the Court's CM/ECF system.

                                     /s/ Timothy E. Grochocinski
                                     Timothy E. Grochocinski